Jerel ("Jerry") L. Ellington
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
Environment & Natural Resources Division
1961 Stout Street - 8th Floor
Denver, CO 80294
Telephone: 303-844-1363

FILED
BILLINGS DIV.

2007 MAY 14 PM 1 52

PATRICK E. DUFFY, CLERK

BY _____

DEPUTY CLERK

ATTORNEY FOR PLAINTIFF THE UNITED STATES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| United States of America | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     and | ) |
| | ) |
| The Northern Cheyenne Tribe, | ) |
| | ) |
|     Plaintiff - Intervenors, | ) |
| | ) |
|     v. | ) Civil No. CV-07-40-BLG-RFC-CSO |
| | ) |
| PPL Montana, LLC, NorthWestern Corporation, | ) |
| d/b/a NorthWestern Energy, Puget Sound Energy, | ) |
| Inc., Portland General Electric Company, | ) |
| Avista Corporation, and PacifiCorp, | ) |
| | ) |
|     Defendants. | ) |

## CONSENT DECREE

## TABLE OF CONTENTS

I.  JURISDICTION AND VENUE ........................................................................................ 4

II.  APPLICABILITY ........................................................................................................... 4

III.  DEFINITIONS ................................................................................................................ 5

IV.  NO$_x$ EMISSION REDUCTIONS AND CONTROLS .................................................... 8

A.  Colstrip Unit 3 ................................................................................................. 8

B.  Colstrip Unit 4 ................................................................................................. 9

C.  General. .......................................................................................................... 10

V.  PROHIBITION ON NETTING CREDITS OR OFFSETS FROM REQUIRED CONTROLS. ................................................................................................................ 11

VI.  RELATIONSHIP TO PSD PERMIT ............................................................................ 12

VII.  CIVIL PENALTY ......................................................................................................... 12

VIII.  ENERGY EFFICIENCY PROJECT ............................................................................. 13

IX.  RESOLUTION OF PLAINTIFFS' CIVIL CLAIMS .................................................... 13

X.  PERIODIC REPORTING ............................................................................................. 14

XI.  STIPULATED PENALTIES ......................................................................................... 15

XII.  FORCE MAJEURE ....................................................................................................... 19

XIII.  DISPUTE RESOLUTION ............................................................................................. 23

XIV.  PERMITS ...................................................................................................................... 25

XV.  INFORMATION COLLECTION AND RETENTION .................................................. 26

XVI.  NOTICES ...................................................................................................................... 28

XVII.  SALES OR TRANSFERS ............................................................................................. 29

XVIII.  EFFECTIVE DATE ....................................................................................................... 32

XIX.  RETENTION OF JURISDICTION ............................................................................... 32

i

| XX. | MODIFICATION | 32 |
| XXI. | GENERAL PROVISIONS | 32 |
| XXII. | SIGNATORIES AND SERVICE | 34 |
| XXIII. | PUBLIC COMMENT | 35 |
| XXIV. | CONDITIONAL TERMINATION OF ENFORCEMENT UNDER DECREE | 35 |
| XXV. | FINAL JUDGMENT | 36 |
| | APPENDIX A | A-1 |

WHEREAS, the United States of America ("the United States"), on behalf of the United States Environmental Protection Agency ("EPA") is filing a Complaint, at the same time as this Consent Decree, against the operator and owners of Units 3 and 4 at the Colstrip Power Plant, PPL Montana, LLC ("PPL Montana"), NorthWestern Corporation, d/b/a NorthWestern Energy, Puget Sound Energy, Inc., Portland General Electric Company, Avista Corporation, and PacifiCorp (collectively "the Defendants") pursuant to Section 113(b) of the Clean Air Act ("the Act"), 42 U.S.C. § 7413(b), for injunctive relief and penalties for alleged violations at the Colstrip Power Plant, Units 3 and 4, of Condition 7 of the Conditional Permit to Commence Construction and Operate the Montana Power Company Colstrip Units #3 and #4, dated September 11, 1979, issued by EPA pursuant to 40 C.F.R. 52.21(i) and Part C of the Act, 42 U.S.C. §§ 7470-92 ("the PSD permit");

WHEREAS, Plaintiff-Intervenor, the Northern Cheyenne Tribe, is filing a Complaint in Intervention and is moving to intervene in this action;

WHEREAS, Condition 7 of the PSD permit requires that at such time as EPA promulgates requirements for best available retrofit technology ("BART") for nitrogen oxides ("$NO_x$") control under the Act, Montana Power Company shall review Colstrip Units 3 and 4 for implementation of BART for $NO_x$ control and submit its analysis to EPA for review and approval and further provides that failure to implement those control measures found to constitute BART shall be a violation of the PSD permit;

WHEREAS, Condition 7 of the PSD permit was adopted as a result of proceedings initiated by the Northern Cheyenne Tribe and conducted pursuant to section 164(e) of the Act, 42 U.S.C. § 7474(e);

WHEREAS, in 1999 PPL Montana assumed Montana Power Company's obligations with respect to the Colstrip Power Plant, including the obligations of the PSD permit, and is currently the operator of Colstrip Units 3 and 4 and is a part owner of Colstrip Unit 3;

WHEREAS, EPA promulgated regulations for protection of visibility in 1980, 45 Fed. Reg. 80,089 (Dec. 2, 1980), that required states to develop and submit state implementation plans ("SIPs") containing, among other things, emission limitations representing BART for certain existing facilities to which visibility impairment was "reasonably attributable." The 1980 regulations also included Guidelines for determining BART for fossil fuel-fired power plants with a capacity greater than 750 megawatts ("MW"). These BART Guidelines provided that a detailed BART demonstration was unnecessary if the state set a BART limit at the level of the New Source Performance Standards in 40 CFR Part 60, but did not require that states set BART at that level.

WHEREAS, neither Montana Power Company nor any of the Defendants submitted a written analysis and recommendation for BART controls for $NO_x$ to EPA, and, consequently, EPA never reviewed or approved BART for $NO_x$ for Colstrip Units 3 and 4 under Condition 7 of the PSD permit;

WHEREAS, EPA issued a compliance order to PPL Montana on December 16, 2003, pursuant to section 113(a)(3)(B) of the Act, 42 U.S.C. § 7413(a)(3)(B), which ordered PPL Montana to comply with all requirements of Condition 7 of the PSD permit for Colstrip Units 3 and 4;

WHEREAS, in response to EPA's compliance order, PPL Montana asserted on behalf of all Defendants, and continues to assert, that the requirement to submit a $NO_x$ BART analysis and recommendation under Condition 7 of the PSD permit was never triggered;

WHEREAS, EPA asserts that its promulgation of the 1980 visibility regulations triggered the requirements of Condition 7 of the PSD permit;

WHEREAS, EPA agreed to defer the effectiveness of the December 16, 2003 compliance order pending settlement negotiations;

WHEREAS, the Defendants have denied and continue to deny the violations alleged in the Complaints, maintain that they have been and remain in compliance with the Act and are not liable for civil penalties or injunctive relief, and are agreeing to the obligations imposed by this Consent Decree to avoid further costs and uncertainty;

WHEREAS, the Parties anticipate that the installation and operation of pollution control equipment pursuant to this Consent Decree will achieve significant reductions of $NO_x$ emissions and thereby improve air quality;

WHEREAS, the Plaintiffs and the Defendants have agreed, and the Court by entering this Consent Decree finds: that this Consent Decree has been negotiated in good faith and at arms length; that this settlement is fair, reasonable, in the best interest of the Parties and in the public interest, and consistent with the goals of the Act; and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter;

NOW, THEREFORE, without any admission by the Defendants, and without adjudication of the violations alleged in the Complaints, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

3

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1362 and 1367, and Sections 113 and 304(a) of the Act, 42 U.S.C. §§ 7413 and 7604(a). Venue is proper under Sections 113(b) and 304(c) of the Act, 42 U.S.C. §§ 7413(b) and 7604(b), and under 28 U.S.C. § 1391(b) and (c). Solely for the purposes of this Consent Decree and the underlying Complaints, and for no other purpose, Defendants waive all objections and defenses they may have to the Court's jurisdiction over this action, to the Court's jurisdiction over the Defendants, and to venue in this District. Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree. Solely for purposes of the Complaints filed by the Plaintiffs in this matter and resolved by the Consent Decree, for purposes of entry and enforcement of this Consent Decree, and for no other purpose, Defendants waive any defense or objection based on standing, and further waive any objection to the motion to intervene filed by the Northern Cheyenne Tribe. Except as expressly provided for herein, this Consent Decree shall not create any rights in or obligations of any Party other than the Plaintiffs and the Defendants. Except as provided in Section XXIII (Public Comment) of this Consent Decree, the Parties consent to entry of this Consent Decree without further notice.

## II. APPLICABILITY

2. Upon entry, the provisions of the Consent Decree shall apply to and be binding upon and inure to the benefit of the Plaintiffs and the Defendants, and their respective successors and assigns, officers, employees and agents, solely in their capacities as such.

4

3. Defendants shall be responsible for providing a copy of this Consent Decree to all vendors, suppliers, consultants, contractors, agents, and any other company or other organization retained to perform any of the material work required by this Consent Decree. Notwithstanding any retention of contractors, subcontractors, or agents to perform any work required under this Consent Decree, Defendants shall be responsible for ensuring that all work is performed in accordance with the requirements of this Consent Decree. In any action to enforce this Consent Decree, Defendants shall not assert as a defense the failure of their officers, directors, employees, servants, agents, or contractors to take actions necessary to comply with this Consent Decree, unless Defendants establish that such failure resulted from a Force Majeure Event, as defined in Paragraph 55 of this Consent Decree.

## III. DEFINITIONS

4. A "24-hour Average Emission Rate" shall be determined by calculating a weighted arithmetic average of all hourly emission rates (in lbs/MMBtu or in lbs/hr, depending on the form of the relevant emission limit), for each Operating Day. The reference methods for determining $NO_x$ emission rates shall be those specified in 40 C.F.R. Part 60. The 24-hour Average Emission Rate specified in Paragraphs 25.a.3 and 26.a.3 equals $((H1)(R1) + (H2)(R2))/24$, where H1= number of hours when load is less than or equal to 400 gross MW, H2=number of hours when load is greater than 400 gross MW, R1=0.30 lbs/MMBtu, and R2=0.25 lbs/MMBtu.

5. A "30-day Rolling Average Emission Rate" shall be determined by calculating a weighted arithmetic average of all hourly emission rates (in lbs/MMBtu or in lbs/hr, depending on the form of the relevant emission limit) for the current Operating Day and the previous 29

5

Operating Days. A new 30-day Rolling Average Emission Rate shall be calculated for each new Operating Day. The reference methods for determining $NO_x$ emission rates shall be those specified in 40 C.F.R. Part 60. The methodology for calculating the weighted average in Paragraphs 25.a.1 and 26.a.1 is similar to that in the definition above, for the "24-hour Average Emission Rate," except that 720 hours are averaged, with R1=0.30 lbs/MMBtu and R2=0.18 lbs/MMBtu.

6.    "CEMS" or "Continuous Emission Monitoring System" means the devices defined in 40 C.F.R. § 72.2 and installed and maintained as required by 40 C.F.R. Part 75.

7.    "Clean Air Act" or "Act" means the federal Clean Air Act, 42 U.S.C. §§7401-7671q, and its implementing regulations.

8.    "Colstrip Units 3 and 4" means, for purposes of this Consent Decree only, the Defendants' electric generating Units 3 and 4 near Colstrip, Montana. Unit 3 has a nominal net rating of 805 MW, and Unit 4 has a nominal net rating of 805 MW.

9.    "Consent Decree" or "Decree" means this Consent Decree.

10.   "Defendants" generally means PPL Montana, LLC, a Delaware limited liability corporation, NorthWestern Energy, Puget Sound Energy, Inc., Portland General Electric Company, Avista Corporation, and PacifiCorp. With regard to provisions of this Consent Decree which apply only to Unit 3 of the Colstrip Power Plant, "Defendants" means PPL Montana, LLC, Puget Sound Energy, Inc., Portland General Electric, Avista Corporation, and PacifiCorp. With regard to provisions of this Consent Decree which apply only to Unit 4 of the Colstrip Power Plant, "Defendants" means PPL Montana, LLC, NorthWestern Energy, Puget Sound Energy, Inc., Portland General Electric Company, Avista Corporation, and PacifiCorp.

6

11. "EPA" means the United States Environmental Protection Agency.

12. "lbs/MMBtu" means pounds per million British thermal units.

13. "National Ambient Air Quality Standards" or "NAAQS" means national ambient air quality standards that EPA promulgates pursuant to Section 109 of the Act, 42 U.S.C. § 7409.

14. "Nonattainment NSR" means the nonattainment area New Source Review program within the meaning of Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515, and 40 C.F.R. Part 51.

15. "$NO_x$" means oxides of nitrogen.

16. "Operating Day" means any calendar day (midnight to midnight) during which a Unit fires coal for any part of that period.

17. "Ownership Interest" means part or all of any Defendant's legal or equitable ownership interest in Unit 3 or 4 at the Colstrip Power Plant.

18. "Parties" means the United States, the Northern Cheyenne Tribe, and the Defendants.

19. "Plaintiffs" means the United States and the Northern Cheyenne Tribe.

20. "PSD" means Prevention of Significant Deterioration within the meaning of Part C of Subchapter I of the Clean Air Act, 42 U.S.C. §§ 7470 - 7492, and 40 C.F.R. Part 52.

21. "PSD permit" means the Conditional Permit to Commence Construction and Operate the Montana Power Company Colstrip Units #3 and #4, dated September 11, 1979, issued by EPA pursuant to 40 C.F.R. 52.21 and Part C of the Act, 42 U.S.C. §§ 7470-92.

22. "Title V Permit" means the permit required for the Colstrip Power Plant under Subchapter V of the Act, 42 U.S.C. §§ 7661-7661e.

7

23.    "Tribe" means the Northern Cheyenne Tribe.

24.    "Unit" means collectively, the coal pulverizer, stationary equipment that feeds coal to the boiler, the boiler that produces steam for the steam turbine, the steam turbine, the generator, the equipment necessary to operate the generator, steam turbine and boiler, and all associated pollution control equipment.

## IV. $NO_x$ EMISSION REDUCTIONS AND CONTROLS

A.    Colstrip Unit 3

25.    Defendants shall comply with the following requirements:

    a.    Beginning January 1, 2008, Defendants shall not exceed any of the following $NO_x$ emissions limits at Colstrip Unit 3:

        1.    As a 30-day Rolling Average Emission Rate: a weighted average of 0.18 lb/MMBtu for each hour in which the Unit is operating above 400 gross MW and 0.30 lb/MMBtu for each hour in which the Unit is operating at or below 400 gross MW.

        2.    As a 30-day Rolling Average Emission Rate: 1,363 lbs/hr.

        3.    As a 24-hour Average Emission Rate: a weighted average of 0.25 lb/MMBtu for each hour in which the Unit is operating above 400 gross MW and 0.30 lb/MMBtu for each hour in which the Unit is operating at or below 400 gross MW.

        4.    As a 24-hour Average Emission Rate: 1,893 lbs/hr.

8

b.    The emission limits specified in paragraphs 25.a.1 through 4 above shall
      apply at all times, including periods of start-up, shutdown, load
      fluctuation, maintenance and malfunction, regardless of cause.

c.    By January 1, 2007, Defendants shall complete the final design for the
      digital controls, low-$NO_x$ burners and overfire air system for Unit 3 and
      shall submit a copy of the final design to the Plaintiffs.

d.    By July 1, 2007, Defendants shall install digital controls, low-$NO_x$ burners
      and overfire air at Unit 3 sufficient to meet the emissions limits in
      paragraph 25.a, and shall begin operating such systems.

B.    Colstrip Unit 4

      26.    Defendants shall comply with the following requirements:

            a.    Beginning January 1, 2010, Defendants shall not exceed the following
                  $NO_x$ emissions limits at Colstrip Unit 4:

                  1.    As a 30-day Rolling Average Emission Rate: a weighted average
                        of 0.18 lb/MMBtu for each hour in which the Unit is operating
                        above 400 gross MW and 0.30 lb/MMBtu for each hour in which
                        the Unit is operating at or below 400 gross MW.

                  2.    As a 30-day Rolling Average Emission Rate: 1,363 lbs/hr.

                  3.    As a 24-hour Calendar Day Average Emission Rate: a weighted
                        average of 0.25 lb/MMBtu for each hour in which the Unit is
                        operating above 400 gross MW and 0.30 lb/MMBtu for each hour
                        in which the Unit is operating at or below 400 gross MW.

9

    4.     As a 24-hour Average Emission Rate: 1,893 lbs/hr.

    b.     The emission limits specified in paragraphs 26.a.1 through 4 above shall apply at all times, including periods of start-up, shutdown, load fluctuation, maintenance and malfunction, regardless of cause.

    c.     By January 1, 2009, Defendants shall complete the final design for the digital controls, low-$NO_x$ burners and overfire air system for Unit 4 and shall submit a copy of the final design to the Plaintiffs.

    d.     By July 1, 2009, Defendants shall install digital controls, low-$NO_x$ burners and overfire air at Unit 4 sufficient to meet the emissions limits in paragraph 26.a and shall begin operating such systems.

C.    General.

27.    On and after January 1, 2008, and January 1, 2010, respectively, until this Decree terminates pursuant to Paragraph 105, Defendants shall, to the extent practicable, operate and maintain the digital controls, low $NO_x$ burners ("LNB") and overfire air on Units 3 and 4 so as to minimize emissions at all times the Units are in operation, consistent with the technological limitations, manufacturers' specifications, and good engineering and maintenance practices for the digital controls, LNB and overfire air technology. Notwithstanding any other provision of this Consent Decree, no stipulated penalties shall accrue for violation of this provision.

28.    In determining compliance with emission limits for $NO_x$, Defendants shall use CEMS in accordance with the operating requirements specified in 40 C.F.R. Part 75.

29.    Performance standards, emission limits, and other quantitative standards set by or under this Consent Decree shall be met to the number of significant digits in which the standard

10

or limit is expressed. For example, an emission limit of 0.100 is not met if the actual emission rate is 0.101. Defendants shall round the fourth significant digit to the nearest third significant digit, or the third significant digit to the nearest second significant digit, depending upon whether the limit is expressed to three or two significant digits. For example, if an actual emission rate is 0.1004, that shall be reported as 0.100, and shall be in compliance with an emission limit of 0.100, and if an actual emission rate is 0.1005, that shall be reported as 0.101, and shall not be in compliance with an emission limit of 0.100. Defendants shall report data to at least the number of significant digits in which the standard or limit is expressed.

30.     For purposes of this Consent Decree, if a Unit is operating above 400 MW for part of one hour and at or below 400 MW for the remainder of that hour, the applicable emissions limits shall be based on the average load for the hour.

31.     Defendants shall maintain their data acquisition system such that load data in MW is recorded no less often than once per minute. Such records shall be maintained for at least five years from the date of recording.

## V.     PROHIBITION ON NETTING CREDITS OR OFFSETS FROM REQUIRED CONTROLS

32.     Emission reductions that result from actions to be taken by Defendants after entry of this Consent Decree to comply with the requirements of this Consent Decree shall not be considered as a creditable contemporaneous emission decrease for the purpose of obtaining a netting credit or offset under the Clean Air Act's Nonattainment NSR, PSD and any other emission trading program currently existing or which may be adopted in the future.

33.     The limitations on the generation and use of netting credits or offsets set forth in Paragraph 32 do not apply to emission reductions achieved by Defendants that are greater than

11

those required under Paragraphs 25 and 26 of this Consent Decree. For purposes of this Paragraph, emission reductions are greater than those required under Paragraphs 25 and 26 only if they result from Defendants' compliance with federally-enforceable emission limits that are more stringent than those limits imposed under Paragraphs 25 and 26 and under all other applicable provisions of the Clean Air Act and the Montana State Implementation Plan.

## VI.   RELATIONSHIP TO PSD PERMIT

34.     The Parties' establishment of the requirements in Section IV ($NO_x$ Emission Reductions and Controls) of this Decree, and Defendants' ongoing compliance with those requirements, shall be deemed permanently to satisfy the requirements of Condition 7 of the PSD permit. Defendants' failure to comply with the requirements of Section IV of this Decree shall be a violation of the PSD permit, and such requirements shall be considered applicable requirements arising from the PSD permit under Title V of the Clean Air Act.

## VII.   CIVIL PENALTY

35.     Within thirty (30) calendar days after entry of this Consent Decree, Defendants shall pay to the United States a civil penalty of $50,000. The civil penalty shall be paid by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing USAO File Number 2007V00057 and DOJ Case Number 90-5-2-1-08494 and the civil action case name and case number of this action. The costs of such EFT shall be Defendants' responsibility. Payment shall be made in accordance with instructions provided to Defendants by the U.S. Attorney's Office for the District of Montana. Any funds received after 2:00 p.m. EDT shall be credited on the next business day. At the time of payment, Defendants shall provide notice of payment, referencing the USAO File

12

Number, the DOJ Case Number, and the civil action case name and case number, to the Department of Justice and to EPA in accordance with Section XVI (Notices) of this Consent Decree.

36. Failure to pay the civil penalty in a timely manner shall subject Defendants to interest accruing from the date payment is due until the date payment is made at the rate prescribed by 28 U.S.C. § 1961 and shall render Defendants liable for all charges, costs, fees, and penalties established by law for the benefit of a creditor or of the United States in securing payment.

37. Payments made pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax-deductible expenditures for purposes of federal law.

## VIII. ENERGY EFFICIENCY PROJECT

38. In partial settlement solely of the complaint filed by the Tribe in this matter, Defendants shall fund a residential energy efficiency project for the benefit of the Tribe, as set forth in the agreement attached as Appendix A to this Decree. Notwithstanding any other provisions of this Decree, failure to complete the energy efficiency project shall not be subject to any stipulated penalties under this Decree.

## IX. RESOLUTION OF PLAINTIFFS' CIVIL CLAIMS

39. Entry of this Decree shall resolve all of the civil claims alleged in the Complaints against Defendants through the date of lodging of this Decree.

40. Reopeners. In addition to their rights to pursue enforcement of the terms of this Decree, the Plaintiffs reserve, and this Consent Decree is without prejudice to, any claim they

13

may have if Defendants operate Colstrip Unit 3 or Unit 4 more than ninety days past July 1, 2007, or July 1, 2009, respectively, without completing the required installation or upgrade and beginning operation of any emission control device required pursuant to Paragraphs 25 and 26.

## X. PERIODIC REPORTING

41.     Beginning thirty (30) days after the end of the second full calendar quarter following the entry of this Consent Decree, and continuing on a semi-annual basis until December 31, 2012, and in addition to any other express reporting requirement in this Consent Decree, Defendants or Defendant PPL Montana as operator and on behalf of all Defendants, shall submit to EPA and the Tribe a progress report.

42.     The progress report shall contain the following information:

  a.     all information necessary to determine compliance with the requirements of this Consent Decree; and

  b.     all information indicating that the installation and beginning of operation of digital controls, LNB or overfire air may be delayed, including the nature and cause of the delay, and any steps taken by Defendants to mitigate such delay.

43.     In any periodic progress report submitted pursuant to this Section, Defendants (or PPL Montana on behalf of the Defendants, as the case may be), may incorporate by reference information previously submitted under their Title V permitting requirements, provided that Defendants (or PPL Montana) attach(es) the Title V permit report, or the relevant portion thereof, and provide a specific reference to the provisions of the Title V permit report that are responsive to the information required in the periodic progress report.

44. In addition to the progress reports required pursuant to this Section, Defendants (or PPL Montana, as operator on behalf of the Defendants) shall provide a written report to EPA and the Tribe of any violation of the requirements of this Consent Decree within fifteen (15) calendar days of when Defendants knew or, in the exercise of reasonable diligence, should have known, of any such violation. In this report, Defendants (or PPL Montana) shall explain the cause or causes of the violation and all measures taken or to be taken by Defendants to prevent such violations in the future.

45. Each Defendant's report shall be signed by (i) each Defendant's Vice President of Environmental Services or his or her equivalent or designee of at least the rank of Vice President, or (ii) on behalf of all Defendants not signing on their own behalf, by the Vice President and Chief Operating Officer of PPL Montana (or his or her equivalent or designee of at least the rank of Vice President), or (iii) on behalf of all Defendants by the designated representative as defined in 40 C.F.R. § 72.2, and shall contain the following certification:

This information was prepared either by me or under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my evaluation, or the direction and my inquiry of the person(s) who manage the system, or the person(s) directly responsible for gathering the information, I hereby certify under penalty of law that, to the best of my knowledge and belief, this information is true, accurate, and complete. I understand that there are significant penalties for submitting false, inaccurate, or incomplete information to the United States.

## XI. STIPULATED PENALTIES

46. For any failure by Defendants to comply with the terms of this Consent Decree, and subject to the provisions of Sections XII (Force Majeure) and XIII (Dispute Resolution), Defendants shall pay, within thirty (30) days after receipt of written demand to Defendants by the United States, the following stipulated penalties to the United States:

15

| **Consent Decree Violation** | **Stipulated Penalty** |
|---|---|
| a. Failure to comply with the applicable 30-day Rolling Average Emission Rate limit for $NO_x$, or the 24-hour Average Emission Rate limit for $NO_x$, where the violation is less than 5% in excess of the limits set forth in this Consent Decree | $2,500 per day |
| b. Failure to comply with the applicable 30-day Rolling Average Emission Rate limit for $NO_x$, or the 24-hour Average Emission Rate limit for $NO_x$, where the violation is equal to or greater than 5% but less than 10% in excess of the limits set forth in this Consent Decree | $5,000 per day |
| c. Failure to comply with the applicable 30-day Rolling Average Emission Rate limit for $NO_x$, or the 24-hour Average Emission Rate limit for $NO_x$, where the violation is equal to or greater than 10% in excess of the limits set forth in this Consent Decree | $10,000 per day |
| d. Operation of a Unit required under this Consent Decree to be equipped with any $NO_x$ control device without the operation of such device, as required under this Consent Decree | $10,000 per day per violation during the first 30 days; $32,500 per day per violation thereafter |
| e. Failure to operate CEMS as required in this Consent Decree | $1,000 per day per violation |
| f. Failure to submit in a timely manner the reports, plans, designs, or other submittals required by this Consent Decree | $750 per day per violation during the first ten days; $1,000 per day per violation thereafter |
| g. Any other violation of this Consent Decree | $1,000 per day per violation |

47.    Violation of an emission limit that is based on a 30-day Rolling Average Emission

Rate is a violation on every day on which the average is based. Where a violation of a 30-day

Rolling Average Emission Rate limit (from the same unit) recurs within periods of less than

thirty (30) days, Defendants shall not pay a daily stipulated penalty for any day of the recurrence

for which a stipulated penalty has already been paid. For any period during which both the lbs/hr

limit is exceeded and the lbs/MMBtu limit is exceeded, a stipulated penalty is owed only for

violation of one of those limits.

16

48.     All stipulated penalties shall begin to accrue on the day after the performance is

due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until

performance is satisfactorily completed or until the violation ceases, whichever is applicable.

Other than the exceptions described in Paragraph 47 above, nothing in this Consent Decree shall

prevent the simultaneous accrual of separate stipulated penalties for separate violations of this

Consent Decree.

49.     Defendants shall pay all stipulated penalties to the United States within thirty (30)

days of receipt of written demand to Defendants from the United States and shall continue to

make such payments every thirty (30) days thereafter until the violation(s) no longer continues,

unless Defendants elect within 20 days of receipt of written demand to Defendants from the

United States to dispute the accrual of stipulated penalties in accordance with the provisions in

Section XIII (Dispute Resolution) of this Consent Decree.

50.     Stipulated penalties shall continue to accrue as provided in accordance with

Paragraph 46 during any dispute, with interest on accrued stipulated penalties payable and

calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961,

but need not be paid until the following:

> a.      If the dispute is resolved by agreement, or by a decision of the United
> States pursuant to Section XIII (Dispute Resolution) of this Consent
> Decree that is not appealed to the Court, accrued stipulated penalties
> agreed or determined to be owing, together with accrued interest, shall be
> paid within thirty (30) days of the effective date of the agreement or of the
> receipt of Plaintiffs' decision;

17

      b.     If the dispute is appealed to the Court and the United States prevails in

whole or in part, Defendants shall, within sixty (60) days of receipt of the

Court's decision or order, pay all accrued stipulated penalties determined

by the Court to be owing, together with interest accrued on such penalties

determined by the Court to be owing, except as provided in Subparagraph

c, below;

      c.     If the Court's decision is appealed by the United States or any Defendant,

Defendants shall, within fifteen (15) days of receipt of the issuance of the

mandate from the appellate court, pay all accrued stipulated penalties

determined to be owing, together with interest accrued on such stipulated

penalties determined to be owing by the appellate court.

51.    All stipulated penalties shall be paid in the following manner:

The penalty shall be paid by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing USAO File Number 2007V00057 and DOJ Case Number 90-5-2-1-08494 and the civil action case name and case number of this action. The costs of such EFT shall be Defendants' responsibility. Payment shall be made in accordance with instructions provided to Defendants by the U.S. Attorney's Office for the District of Montana. Any funds received after 2:00 p.m. Eastern Time shall be credited on the next business day. At the time of payment, Defendants shall provide notice of payment, referencing the USAO File Number 2007V00057, the DOJ Case Number 90-5-2-1-08494, and the civil action case name and case number, to the Department of Justice and to EPA in accordance with Section XVI (Notices) of this Consent Decree.

18

52.     Should Defendants fail to pay stipulated penalties in compliance with the terms of this Consent Decree, the United States shall be entitled to collect interest on such penalties, as provided for in 28 U.S.C. § 1961, and Defendants shall be liable for all charges, costs, fees, and penalties established by law for the benefit of a creditor or of the United States in securing payment.

53.     Payments made pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax-deductible expenditures for purposes of federal law.

54.     The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the Plaintiffs by reason of Defendants' failure to comply with any requirement of this Consent Decree or applicable law; except that, for any violation of the Act for which this Consent Decree provides for payment of a stipulated penalty, Defendants shall be allowed a dollar-for-dollar credit for stipulated penalties paid against any federal statutory civil penalties also imposed for such violation. Notwithstanding any other provision of this Consent Decree, the United States may, in its unreviewable discretion, waive all or any part of any stipulated penalties which have accrued pursuant to this Consent Decree.

## XII.  FORCE MAJEURE

55.     For purposes of this Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of Defendants, its contractors, or any entity controlled by Defendants that delays compliance with any provision of this Consent Decree or otherwise causes a violation of any provision of this Consent Decree

19

despite Defendants' best efforts to fulfill the obligation. "Best efforts to fulfill the obligation" include using best efforts to anticipate any potential Force Majeure Event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay or violation is minimized to the greatest extent possible.

56.    Notice of Force Majeure Events.  If any event occurs or has occurred that may delay compliance with or otherwise cause a violation of any obligation under this Consent Decree, as to which Defendants intend to assert a claim of Force Majeure, Defendants shall notify the Plaintiffs in writing as soon as practicable, but in no event later than twenty (20) business days following the date Defendants first knew, or by the exercise of due diligence should have known, that the event caused or may cause such delay or violation. In this notice, Defendants shall reference this Paragraph of this Consent Decree and describe the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or violation, all measures taken or to be taken by Defendants to prevent or minimize the delay or violation, the schedule by which Defendants propose to implement those measures, and Defendants' rationale for attributing a delay or violation to a Force Majeure Event. Defendants shall adopt all reasonable measures to avoid or minimize such delays or violations. Defendants shall be deemed to know of any circumstance which Defendants, their contractors, or any entity controlled by Defendants knew or should have known.

57.    Failure to Give Notice.  If Defendants fail to comply with the notice requirements of this Section, the United States (after consultation with the Tribe), may void Defendants' claim for Force Majeure as to the specific event for which Defendants have failed to comply with such notice requirement.

58.    Plaintiffs' Response.  The United States shall notify Defendants in writing regarding Defendants' claim of Force Majeure within twenty (20) business days of receipt of the notice provided under Paragraph 55.  If the United States (after consultation with the Tribe), agrees that a delay in performance has been or will be caused by a Force Majeure Event, the United States and Defendants shall stipulate to an extension of deadline(s) for performance of the affected compliance requirement(s) by a period equal to the delay actually caused by the event. In such circumstances, an appropriate modification shall be made pursuant to Section XX (Modification) of this Consent Decree.

59.    Disagreement.  If the United States (after consultation with the Tribe), does not accept Defendants' claim of Force Majeure, if the United States and Defendants cannot agree on the length of the delay actually caused by the Force Majeure Event, or if the Tribe does not agree with the United States's determination regarding Defendants' claim of Force Majeure, the matter shall be resolved in accordance with Section XIII (Dispute Resolution) of this Consent Decree.

60.    Burden of Proof.  In a dispute regarding Force Majeure, Defendants shall bear the burden of proving that any delay in performance or any other violation of any requirement of this Consent Decree was caused by or will be caused by a Force Majeure Event.  Defendants shall also bear the burden of proving that Defendants gave the notice required by this Section and the burden of proving the anticipated duration and extent of any delay(s) attributable to a Force Majeure Event.  In a dispute between the Plaintiffs regarding the applicability of Force Majeure, the Tribe will have the burden of proof.  An extension of one compliance date based on a particular event may, but will not necessarily, result in an extension of a subsequent compliance date.

61. Exclusions. Unanticipated or increased costs or expenses associated with the performance of Defendants' obligations under this Consent Decree shall not constitute a Force Majeure Event. Failure to comply with the emission limits specified in paragraphs 25.a.1 through 4 and 26.a.1 through 4 of this Consent Decree shall not be subject to a claim of Force Majeure, except that Defendants may assert that initial compliance with such emission limits as of the deadlines specified in paragraphs 25.a and 26.a has been delayed by a Force Majeure Event.

62. Potential Force Majeure Events. The Parties agree that, depending upon the circumstances related to an event and Defendants' response to such circumstances, the kinds of events listed below are among those that could qualify as Force Majeure Events within the meaning of this Section: construction, installation, labor, or equipment shortages or delays; acts of God; acts of war or terrorism; an order by a government official, government agency, other regulatory authority, or a regional transmission organization, acting under and authorized by applicable law, that directs Defendants to supply electricity in response to a system-wide (state-wide or regional) emergency. Depending upon the circumstances and Defendants' response to such circumstances, failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure Event where the failure of the permitting authority to act is beyond the control of Defendants and Defendants have taken all steps available to them to obtain the necessary permit, including, but not limited to: submitting a complete permit application; responding to requests for additional information by the permitting authority in a timely fashion; and accepting lawful permit terms and conditions imposed by the permitting authority.

22

63.     As part of the resolution of any matter submitted to this Court under Section XIII

(Dispute Resolution) of this Consent Decree regarding a claim of Force Majeure, the Plaintiffs

and Defendants by agreement, or this Court by order, may in appropriate circumstances extend or

modify the schedule for completion of work under this Consent Decree to account for the delay

in the work that occurred as a result of any delay agreed to by the United States or approved by

the Court. Defendants shall be liable for stipulated penalties for its failure thereafter to complete

the work in accordance with the extended or modified schedule (provided that Defendants shall

not be precluded from making a further claim of Force Majeure with regard to meeting any such

extended or modified schedule).

## XIII.   DISPUTE RESOLUTION

64.     The dispute resolution procedure provided by this Section shall be available to

resolve all disputes arising under this Consent Decree, provided that the Party invoking such

procedure has first made a good faith attempt to resolve the matter with the other Parties.

65.     The dispute resolution procedure required herein shall be invoked by one Party

giving written notice to the other Parties advising of a dispute pursuant to this Section. The

notice shall describe the nature of the dispute and shall state the noticing Party's position with

regard to such dispute. Each Party receiving such a notice shall acknowledge receipt of the

notice, and the Parties in dispute shall expeditiously schedule a meeting to discuss the dispute

informally not later than fourteen (14) days following receipt of such notice.

23

66.     Disputes submitted to dispute resolution under this Section shall, in the first instance, be the subject of informal negotiations among the disputing Parties. Such period of informal negotiations shall not extend beyond thirty (30) calendar days from the date of the first meeting among the disputing Parties' representatives unless they agree in writing to extend this period. During the informal negotiations period, the disputing Parties may also submit their dispute to a mutually agreed upon alternative dispute resolution (ADR) forum if the Parties agree that the ADR activities can be completed within the 30-day informal negotiations period (or such longer period as the Parties may agree to in writing).

67.     If the disputing Parties are unable to reach agreement during the informal negotiation period, the Plaintiffs or either one of them shall provide Defendants with a written summary of their position regarding the dispute. The written position provided by a Plaintiff shall be considered binding unless, within forty-five (45) calendar days thereafter, Defendants seek judicial resolution of the dispute by filing a petition with this Court. The Plaintiffs or any one of them may respond to the petition within forty-five (45) calendar days of filing. In their initial filings with the Court under this Paragraph, the disputing Parties shall state their respective positions as to the applicable standard of law for resolving the particular dispute.

68.     The time periods set out in this Section may be shortened or lengthened upon motion to the Court of one of the Parties to the dispute, explaining the Party's basis for seeking such a scheduling modification.

69.     Except as provided herein, this Court shall not draw any inferences nor establish any presumptions adverse to any disputing Party as a result of invocation of this Section or the disputing Parties' inability to reach agreement.

70.     As part of the resolution of any dispute under this Section, in appropriate circumstances the Parties may agree on, or this Court may order, an extension or modification of the schedule for the completion of the activities required under this Consent Decree to account for the delay that occurred as a result of dispute resolution. Defendants shall be liable for stipulated penalties for their failure thereafter to complete the work in accordance with the extended or modified schedule; provided that Defendants shall not be precluded from asserting that a Force Majeure Event has caused or may cause a delay in complying with the extended or modified schedule.

## XIV.   PERMITS

71.     Unless expressly stated otherwise in this Consent Decree, in any instance where otherwise applicable law or this Consent Decree requires Defendants to secure a permit to authorize construction or operation of any device contemplated herein, including all preconstruction, construction, and operating permits required under state law, Defendants shall make such application in a timely manner, but failure to do so shall not constitute an independent violation of this Consent Decree subject to stipulated penalties. EPA shall use its best efforts to review expeditiously all permit applications submitted by Defendants in order to meet the requirements of this Consent Decree.

72.     When permits are required to implement this Decree Defendants shall complete and submit applications for such permits to the appropriate authorities to allow time for all legally required processing and review of the permit request, including requests for additional information by the permitting authorities. Any failure by Defendants to submit a timely permit application for Unit 3 or Unit 4 shall bar any use by Defendants of Section XII (Force Majeure)

25

of this Consent Decree, where a Force Majeure claim is based on permitting delays, but shall not otherwise constitute an independent violation of this Consent Decree subject to stipulated penalties.

73. Notwithstanding the reference to a Title V permit in this Consent Decree, the enforcement of such permit shall be in accordance with its own terms and the Act. The Title V permit shall not be enforceable under this Consent Decree, although any term or limit established by or under this Consent Decree shall be enforceable under this Consent Decree regardless of whether such term has or will become part of a Title V permit, subject to the terms of Section XXIV (Conditional Termination of Enforcement Under Decree) of this Consent Decree.

74. Within one hundred eighty (180) days after entry of this Consent Decree, Defendants shall amend any applicable Title V permit application and federally-enforceable state permit application, or apply for an amendment of their Title V permit and federally-enforceable state permit, to include all requirements of Paragraphs 25.a, 25.b, 25.d, 26.a, 26.b, 26.c, 26.d, 28-34 and 77 of this Consent Decree, together with the applicable definitions in Section III.

75. For changes related to or required by this Consent Decree, Defendants shall provide the Tribe with a copy of each application to amend their Title V permit and federally enforceable state permit to allow for timely participation in any public comment opportunity.

## XV. INFORMATION COLLECTION AND RETENTION

76. Any authorized representative of the United States, including its attorneys, contractors, and consultants, upon presentation of credentials, shall have a right of entry upon the premises of any Defendant's facility at any reasonable time for the purpose of:

    a.    monitoring the progress of activities required under this Consent Decree;

26

        b.      verifying any data or information submitted to the United States in accordance with the terms of this Consent Decree;

        c.      obtaining samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants; and

        d.      assessing Defendants' compliance with this Consent Decree.

77.     Defendants shall retain, and instruct their contractors and agents to preserve, all non-identical copies of all records and documents (including records and documents in electronic form), in their or their contractors' or agents' possession or control, and that directly relate to Defendants' performance of their obligations under this Consent Decree for the following periods: (a) until December 31, 2020, for records concerning physical or operational changes undertaken in accordance with Paragraphs 25 and 26; and (b) until December 31, 2017, for all other records. This record retention requirement shall apply regardless of any corporate document retention policy to the contrary.

78.     All information and documents submitted by Defendants to EPA or the United States pursuant to this Consent Decree shall be subject to any requests under applicable law providing for public disclosure of documents unless Defendants claim and substantiate in accordance with 40 C.F.R. Part 2 that the information and documents contain confidential business information. All information and documents submitted by Defendants to the Tribe pursuant to this Consent Decree that Defendants claim and substantiate in accordance with 40 C.F.R. Part 2 as containing confidential business information shall be maintained by the Tribe as confidential for as long as EPA remains obligated to maintain that information as confidential.

79. Nothing in this Consent Decree shall limit the authority of the EPA or the State of

Montana to conduct tests and inspections at Defendants' facilities under Section 114 of the Act,

42 U.S.C. § 7414, or any other applicable federal or state law, regulation or permit.

## XVI. NOTICES

80. Unless otherwise provided herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

As to the United States of America:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611, Ben Franklin Station
> Washington, D.C. 20044-7611
> DOJ# 90-5-2-1-08494

and

> Director, Air Enforcement Division
> Office of Enforcement and Compliance Assurance
> U.S. Environmental Protection Agency
> Ariel Rios Building (Mail Code 2242A)
> 1200 Pennsylvania Avenue, N.W.
> Washington, DC 20460

and

> Air Program Coordinator
> U.S. EPA Region 8 Montana Office
> 10 W. Fifteenth St., Suite 3200
> Helena, MT 59626

As to the Northern Cheyenne Tribe:

> Director, Northern Cheyenne Tribe
> Department of Environmental Protection
> P.O. Box 128
> Lame Deer, MT 59043

28

and

> John B. Arum
> Ziontz, Chestnut, Varnell, Berley & Slonim
> 2101 Fourth Avenue, Suite 1230
> Seattle, WA 98121

As to Defendants:

> General Counsel
> PPL Montana, LLC
> 303 North Broadway, Suite 400
> Billings, MT 59101-1255

and

> Manager, Environmental Engineering
> Colstrip Steam Generating Station
> Willow Avenue & Warehouse Road
> P.O. Box 38
> Colstrip, MT 59323-0038

81.    All notifications, communications or submissions made pursuant to this Section

shall be sent by electronic mail and followed either by:  (a) overnight mail or overnight delivery

service, or (b) certified or registered mail, return receipt requested. All notifications,

communications and transmissions sent by overnight, certified or registered mail shall be deemed

submitted on the date they are postmarked, or the date they are delivered to the overnight

delivery service.

82.    Any Party may change either the notice recipient or the address for providing

notices to it by serving all other Parties with a notice setting forth such new notice recipient or

address.

## XVII. SALES OR TRANSFERS

83.    If a Defendant proposes to sell or transfer all or part of its Ownership Interest or

its responsibility as operator of Unit 3 or Unit 4 to an entity unrelated to any of the Defendants

("Third Party"), it shall advise the Third Party in writing of the existence of this Consent Decree prior to such sale or transfer and shall send a copy of such written notification to the Plaintiffs pursuant to Section XVI (Notices) of this Consent Decree at least sixty (60) days before such proposed sale or transfer.

84.     No sale or transfer of an Ownership Interest to a Third Party shall take place before the Third Party consents in writing, by a stipulation to be filed with the Court, to: (a) accept all of the obligations, terms and conditions of this Consent Decree applicable to the relevant Unit; (b) the jurisdiction of the Court to enforce the terms of this Consent Decree as to such party; and (c) become a party to this Consent Decree. Notwithstanding such a sale or transfer of an Ownership Interest to a Third Party, the Defendant transferring such interest shall remain jointly and severally liable with the Third Party unless the Consent Decree is modified or the Defendant's joint and several liability is restricted in accordance with Paragraph 85.

85.     The Defendant selling or transferring an Ownership Interest to a Third Party may propose to the United States and the Tribe that that Defendant shall be relieved from further obligations or liabilities applicable to the purchased or transferred Ownership Interests or operator responsibility. The affected Defendant shall provide adequate assurances to the United States and the Tribe that the Third Party has the financial and technical capabilities and resources, in conjunction with the other Defendants, to carry out such obligations or liabilities. If the United States and the Tribe agree with the affected Defendant's proposal, the Parties shall jointly request the Court approve an appropriate modification of this Consent Decree. If the United States or the Tribe does not agree with the affected Defendant's proposal, the matter shall be resolved in accordance with Section XIII (Dispute Resolution) of this Consent Decree.

Notwithstanding the foregoing, however, the affected Defendant may not assign, and may not be released from, obligations under this Consent Decree to pay the civil penalty in accordance with Section VII, undertake the Additional Injunctive Relief in accordance with Section VIII, pay stipulated penalties with respect to actions occurring prior to the date of transfer of Ownership Interests or operator responsibility in accordance with Section XI, or maintain documents or provide reports with respect to those obligations in accordance with Sections X and XV. The affected Defendant may also propose, and the United States and the Tribe may agree, to restrict the scope of the joint and several liability of any purchaser or transferee for any obligations of this Consent Decree that are not specific to the transferred or purchased Ownership Interests or operator responsibility, to the extent such obligations may be adequately separated in an enforceable manner.

86. Paragraphs 84 and 85 of this Consent Decree do not apply if an Ownership Interest is sold or transferred solely as collateral security in order to consummate a financing arrangement (not including a sale-leaseback), so long as the affected Defendant: a) remains an owner (as that term is used and interpreted under the Clean Air Act) of Colstrip Unit 3 or 4; b) remains subject to and liable for any obligations and liabilities of this Consent Decree; and c) supplies Plaintiffs with the following certification within 30 days of the sale or transfer:

> "Certification of Change in Ownership Interest Solely for Purpose of Consummating Financing. We, the Chief Executive Officer and General Counsel of [Defendant Company], hereby jointly certify under Title 18 U.S.C. Section 1001, on our own behalf and on behalf of [Defendant Company], that any change in Defendant's Ownership Interest in any Unit that is caused by the sale or transfer as collateral security of such Ownership Interest in such Unit(s) pursuant to the financing agreement consummated on [insert applicable date] between Defendant and [insert applicable entity]: a) is made solely for the purpose of providing collateral security in order to consummate a financing arrangement; b) does not impair Defendant's ability, legally or otherwise, to comply timely with all terms

31

and provisions of the Consent Decree entered in *United States of America, et al. v. PPL Montana, LLC, et al.*, Civil Action No.[[_____]]; c) does not affect [Defendant Company's] interest in any Unit covered by that Consent Decree in a manner that is inconsistent with [Defendant Company's] performance of its obligations under the Consent Decree; and d) in no way affects the status of [Defendant Company's] obligations or liabilities under that Consent Decree."

## XVIII.   EFFECTIVE DATE

87.     The effective date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court.

## XIX.   RETENTION OF JURISDICTION

88.     The Court shall retain jurisdiction of this case after entry of this Consent Decree

to enforce compliance with the terms and conditions of this Consent Decree and to take any

action necessary or appropriate for its interpretation, construction, execution, or modification, or

for adjudication of disputes.  During the term of this Consent Decree, any Party to this Consent

Decree may apply to the Court for any relief necessary to construe or effectuate this Consent

Decree.

## XX.   MODIFICATION

89.     The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by the Parties.  Where the modification constitutes a material change to any

term of this Decree, it shall be effective only upon approval by the Court.

## XXI.   GENERAL PROVISIONS

90.     This Consent Decree is not a permit.  Compliance with the terms of this Consent

Decree does not guarantee compliance with all applicable federal, state, or local laws or

regulations.  The emission limits set forth herein do not relieve the Defendants from any

obligation to comply with other state and federal requirements under the federal Clean Air Act or the Montana Clean Air Act.

91.     This Consent Decree does not apply to any claim(s) of alleged criminal liability.

92.     In any subsequent administrative or judicial action initiated by either of the Plaintiffs for injunctive relief or civil penalties relating to Colstrip Units 3 or 4, the Defendant shall not assert any defense or claim based upon principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, or claim splitting, or any other defense based upon the contention that the claims raised by any of the Plaintiffs in the subsequent proceeding were brought, or should have been brought, in the instant case; provided, however, that nothing in this Paragraph is intended to affect the validity of Section IX (Resolution of Plaintiffs' Civil Claims).

93.     Except as specifically provided by this Consent Decree, nothing in this Consent Decree shall relieve any Defendant of its obligation to comply with all applicable federal, state, and local laws and regulations. Subject to the provisions in section IX (Resolution of Plaintiffs' Civil Claims), nothing contained in this Consent Decree shall be construed to prevent or limit the rights of the Plaintiffs to obtain penalties or injunctive relief under the Act or other federal, state, or local statute, regulation, or permit.

94.     Every term expressly defined by this Consent Decree shall have the meaning given to that term by this Consent Decree, and, except as otherwise provided in this Decree, every other term used in this Decree that is also a term under the Act or the regulations implementing the Act shall have the meaning in this Decree that such term has under the Act or those implementing regulations.

33

95. Nothing in this Consent Decree is intended to, or shall, alter or waive any applicable law (including but not limited to any defenses, entitlements, challenges, or clarifications related to the Credible Evidence Rule, 62 Fed. Reg. 8314 (Feb. 24, 1997)) concerning the use of data for any purpose under the Act.

96. Each limit and/or other requirement established by or under this Decree is a separate, independent requirement.

97. This Consent Decree does not limit, enlarge or affect the rights of any Party to this Consent Decree as against any third parties.

98. This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree and supersedes all prior agreements and understandings among the Parties related to the subject matter herein. No other document, representation, inducement, agreement, understanding, or promise constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

99. Each Party shall bear its own costs and attorneys' fees.

100. Nothing in this Decree shall be construed as a waiver of the sovereign immunity of the United States or the Tribe.

## XXII. SIGNATORIES AND SERVICE

101. Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind to this document the Party he or she represents.

34

102. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

103. Each Party hereby agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII. PUBLIC COMMENT

104. The Parties agree and acknowledge that final approval by the United States and entry of this Consent Decree is subject to the procedures of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, an opportunity for public comment, and the right of the United States to withdraw or withhold consent if the comments disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate. The Defendants shall not oppose entry of this Consent Decree by this Court or challenge any provision of this Consent Decree unless the United States has notified the Defendants, in writing, that the United States no longer supports entry of the Consent Decree.

## XXIV. CONDITIONAL TERMINATION OF ENFORCEMENT UNDER DECREE

105. Conditional Termination of Enforcement Through the Consent Decree. After December 31, 2013, if the Defendants:

   a. have successfully completed construction, and are maintaining operation, of all pollution controls as required by this Consent Decree; and

   b. have obtained final Title V permits and any necessary federally-enforceable state permits (i) as required by the terms of this Consent

35

Decree; (ii) that cover all units in this Consent Decree; and (iii) that

include as enforceable permit terms all of the Unit performance and other

requirements specified in Section XIV (Permits) of this Consent Decree,

then Defendants may so certify these facts to the Plaintiffs and this Court.

If the Plaintiffs do not object in writing with specific reasons within

forty-five (45) days of receipt of Defendants' certification, then, for any

Consent Decree violations that occur after the filing of notice, the

Plaintiffs shall pursue enforcement of the requirements contained in the

Title V permit or the applicable federally-enforceable state permit through

the Title V permit or the applicable federally-enforceable state permit and

not through this Consent Decree.

106.    Resort to Enforcement under this Consent Decree.  Notwithstanding Paragraph

105, if enforcement of a provision in this Decree cannot be pursued by a Party under the

applicable Title V permit or the applicable federally-enforceable state permit, or if a Decree

requirement was intended to be part of a Title V Permit or the applicable federally-enforceable

state permit and did not become or remain part of such permit, then such requirement may be

enforced under the terms of this Decree at any time.

## XXV.    FINAL JUDGMENT

107.    Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment among the Plaintiffs and Defendants.

36

SO ORDERED, THIS  14th  DAY OF    MAY          , 2007 .

HONORABLE    Richard F. Cebull
UNITED STATES DISTRICT COURT JUDGE

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR THE UNITED STATES OF AMERICA:**

Date: 3/7/07

Matthew J. McKeown
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice, Room 2143
950 Pennsylvania Avenue, NW
Washington, D.C.  20530

Date: _____

Jerel ("Jerry") L. Ellington
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street – 8th Floor
Denver, CO  80294

Date: _____

William W. Mercer
United States Attorney
District of Montana
2929 Third Avenue North
Billings, MT  59102

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR THE UNITED STATES OF AMERICA:**

Date: _____          _____
                                 Matthew J. McKeown
                                 Acting Assistant Attorney General
                                 Environment and Natural Resources Division
                                 United States Department of Justice, Room 2143
                                 950 Pennsylvania Avenue, NW
                                 Washington, D.C. 20530

Date: 3/14/2007                  _____
                                 Jerel ("Jerry") L. Ellington
                                 Senior Counsel
                                 Environmental Enforcement Section
                                 Environment and Natural Resources Division
                                 United States Department of Justice
                                 1961 Stout Street – 8th Floor
                                 Denver, CO 80294

Date: February 25, 2007          _____
                                 William W. Mercer
                                 United States Attorney
                                 District of Montana
                                 2929 Third Avenue North
                                 Billings, MT 59102

38

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC et al.*

Date: **2|23|07**

Granta Y. Nakayama
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Date: 2/15/07

Adam M. Kushner
Director, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

39

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*


Date: 12/22/2006

Carol Rushin
Assistant Regional Administrator
Office of Enforcement, Compliance and
 Environmental Justice
U.S. Environmental Protection Agency
Region 8
999 18th Street, Suite 300
Denver, CO  80202


Date: Dec. 19, 2006

David Rochlin
Senior Air Enforcement Attorney
U.S. Environmental Protection Agency
Region 8
999 18th Street, Suite 300
Denver, CO  80202

40

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR THE NORTHERN CHEYENNE TRIBE**

Date: 2/7/7

Eugene Little Coyote
Tribal President

Date: 2/8/07

John B. Arum
Counsel for the Tribe
Ziontz, Chestnut, Varnell, Berley & Slonim
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121

41

Signature Page for Consent Decree in:

*United States of America et al*

*v.*

*PPL Montana, LLC, et al*

**FOR PUGET SOUND ENERGY:**

DATE: 12 21 06

Mr. Paul Wiegand
Vice President, Project Development & Contract Management
Puget Sound Energy, Inc.
10885 NE 4th Street (PSE-12S)
PO Box 97034
Bellevue, WA 98009-9734

42

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR  PPL MONTANA, LLC:**

*Brad Spencer*                    DATE: *Dec   19  2006*

Mr. Brad Spencer
Vice President and Chief Operating Officer
PPL Montana, LLC
303 North Broadway, Suite 400
Billings, MT  59101

> OFFICE OF
> GENERAL COUNSEL
> BY:
> DATE: 12/19/06

43

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR AVISTA CORPORATION:**

DATE: Dec 27, 2006

Mr. George Perks, Mgr.
Generation/Joint Projects
Avista Corporation
PO Box 3727
Spokane, WA  99220

44

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR PORTLAND GENERAL ELECTRIC COMPANY:**

DATE: 1 / 5 /07

Mr. James J. Piro
Executive Vice President
Portland General Electric
121 SW Salmon Street
Portland, Oregon 97204

45

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR NORTHWESTERN CORPORATION,**
**d/b/a NORTHWESTERN ENERGY:**

DATE: _12/21/06_

Mr. Michael J. Barnes
Resource Coordinator, Energy Supply
NorthWestern Corporation,
d/b/a NorthWestern Energy
40 East Broadway
Butte, MT 59701

Signature Page for Consent Decree in:

*United States of America et al.*
*v.*
*PPL Montana, LLC, et al.*

**FOR PACIFICORP:**

DATE: 1/5/07

Mr. Mark Mansfield
Vice President, Thermal Operations
PacifiCorp
1407 W. North Temple
Salt Lake City, UT  84116

47